UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD BANKS, *et al.*,<br><br>*Plaintiffs-Petitioners*<br><br>v.<br><br>QUINCY BOOTH, in their official capacity as Director of the District of Columbia Department of Corrections, *et al.*,<br><br>*Defendants-Respondents*. | No. 1:20-cv-849 (CKK) |

[AMENDED PROPOSED]
**TEMPORARY RESTRAINING ORDER**

Upon consideration Plaintiffs' application for a temporary restraining order, and any opposition, reply, and further pleadings and argument submitted in support thereof, or in opposition thereto;

It appearing to the Court that Plaintiffs are likely to succeed on the merits of their action, that Plaintiffs and the members of the class they seek to represent will suffer irreparable injury to their Fifth and Eighth Amendment rights and, at a minimum, severely increased risks to their health, perhaps including death, if Defendants are not immediately ordered to take appropriate measures against Plaintiffs' exposure to the COVID-19 virus, that the Defendants will not be harmed if such an order is issued, and that the public interest favors the entry of such an order, it is, therefore,

ORDERED that Plaintiff's application for a temporary restraining order is hereby GRANTED; and Defendants Booth and Johnson (together with their respective successors in

office, officers, agents, servants, employees, attorneys and anyone acting in concert with them) are, for fourteen days from the date and time shown below, hereby:

1. Immediately take all actions within their power to reduce the inmate population of the D.C. Jail and CTF including, but not limited to, releasing as many people as possible through the COVID-19 Response Emergency Amendment Act of 2020, which allows the Department of Corrections "to award additional credits beyond the limits described . . . to effectuate the immediate release of persons sentenced for misdemeanors[.]"  67 D.C. Reg. 3106 (March 20, 2020);

2. Ensure that each inmate receives, free of charge, an individual supply of hand soap, sufficient to allow frequent hand washing; paper towels; toilet paper; running water; and facial tissue;

3. Provide no-touch trash receptacles for tissue and paper towel disposal;

4. Ensure that all inmates, when not in cells with access to hand soap and running water, have access to hand sanitizer containing at least 60% alcohol;

5. Provide access to daily showers for each inmate and daily access to clean laundry, including clean personal towels and washrags after each shower;

6. Require that all DOC staff wear personal protective equipment, including masks and gloves when interacting with visitors and residents or when touching surfaces in common areas;

7. Provide an anonymous mechanism for residents to report staff who violate these guidelines so that appropriate corrective action can be taken to ensure staff compliance.

8. Take each inmate's temperature daily (with a functioning and properly operated thermometer) to identify potential COVID-19 infections;

9. Assess (through questioning) each inmate daily to identify potential COVID-19 infections;

10. Conduct immediate testing for anyone displaying known symptoms of COVID-19;

11. Immediately provide masks for any individual displaying or reporting COVID-19 symptoms until they can be evaluated by a qualified medical professional or placed in non-punitive quarantine;

12. Frequently communicate to inmates to provide information about COVID-19, reducing the risk of transmission, and any changes in policies or practices;

13. Provide inmates with an adequate supply of disinfectant hand wipes or disinfectant products effective against the virus that causes COVID-19 (at the manufacturer's recommended concentration), to clean their cells and other surfaces;

14. Clean and disinfect frequently touched surfaces with disinfectant products effective against the virus that causes COVID-19 (at the manufacturer's recommended concentration), as well as surfaces in common areas, every two hours during waking hours, and at least once during the night;

15. Ensure that individuals identified as having COVID-19 or having been exposed to COVID-19 are properly quarantined in a non-punitive setting, with continued access to showers, recreation, mental health services, reading materials, commissary, phone and video visitation with loved ones, communication with counsel, and personal property;

16. Respond to all emergency (as defined by the medical community) requests for medical attention within an hour;

17. Provide access to unmonitored, confidential legal calls and video visits with counsel to reduce the need for defense teams to enter into the facility and meet with clients in dangerously close quarters; and

18. Facilitate video conferencing and telephonic conferencing, when requested, as an alternative to in-person court appearances.

19. Provide any independent monitor to be appointed by this Court with unfettered access to medical units, confidential communication with detained individuals in and out of quarantine, and surveillance video of public areas of the facilities;

20. Appoint an expert under Federal Rule of Evidence 706 to make recommendations to the Court regarding how many and which class members to order released so as to ensure that the number of prisoners remaining at the CDF and CTF can be housed consistently with CDC guidance on best practices to prevent the spread of COVID-19, including the requirement that prisoners be able to maintain six feet of space between them and further order that such recommendations take into account CDC guidance concerning health factors that put individuals at elevated risk of death from COVID-19.

It is further ORDERED that Plaintiffs shall not be required to furnish security for costs.

Entered on April ___, 2020 at _____ a.m./p.m.

By: _____
United States District Judge