UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD BANKS, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>QUINCY BOOTH, in his official capacity as Director of the District of Columbia Department of Corrections, *et al.*,<br><br>　　　　　　Defendants. | No. 1:20-cv-849 (CKK) |

## CONSENT ORDER APPOINTING AMICUS

The Court hereby appoints Grace M. Lopes and Mark Jordan as *amici curiae* to provide information to the Court. The specific information that the Court seeks from *amici* is listed in the attachment to this Order, and further orders regarding form and deadlines for reporting to the Court will issue later.

Further, the Court ORDERS that Grace M. Lopes and Mark Jordan shall be able to enter Department of Corrections ("DOC") facilities, including Correctional Treatment Facility ("CTF") and the Central Detention Facility ("CDF") unannounced and bring with them cameras, cell phones, writing implements, and any other equipment required to conduct their site visits. Once in the facilities, Grace Lopes and Mark Jordan shall be permitted to inspect areas of the facilities without limitation, and shall be permitted to speak with staff and residents in confidence and outside of the presence of DOC supervisors and staff.

It is further ORDERED that Grace M. Lopes and Mark Jordan shall be permitted to review all pertinent DOC records and documents, electronic or otherwise, and video footage in connection with their investigation. The DOC is also ORDERED to preserve all pertinent documents and video footage.

It is further ORDERED that the DOC shall make all CTF and CDF managers and staff available for interviews, including telephonic interviews conducted by amici.

It is further ORDERED that *amici curiae* be provided by DOC with a sufficient supply of full personal protective equipment to safely enable their inspections at the time of those inspections.

Dated: April 8, 2020                              /S/
                                                  Colleen Kollar-Kotelly
                                                  United States District Judge

## ATTACHMENT

*Amici curiae* are directed to review the following documents:

- The "DC Department of Corrections' COVID-19 Response FAQs," *available at* https://doc.dc.gov/page/coronavirus-prevention

- The declarations and documents filed by Defendants:
    - Dkt. No. 19-3 (Unity Health Care Coronavirus Protocol)
    - Dkt. No. 19-4 (DOC Coronavirus Screening Protocol Flowchart)
    - Dkt. No. 19-5 (DOH guidance, Email from Shreya Khuntia)
    - Dkt. No. 19-6 (Medical Plan for Pandemic Influenza)
    - Dkt. No. 20-1 (Declaration of Lennard Johnson)
    - Dkt. No. 20-2 (Declaration of Beth Jordan)
    - Dkt. No. 22 (SEALED DOC Pandemic Plan)

- The declarations and documents filed by Plaintiffs
    - Dkt. No. 5-2 (Exhibits in Support of TRO)
    - Dkt. No. 23-11 (Declaration of Michael Hannon)
    - Dkt. No. 24-1 (Declaration of Doreen Deterville)
    - Dkt. No. 24-2 (Declaration of Lennette Nesbitt)
    - Dkt. No. 26-1 (Declaration of Kamal Donchy)
    - Dkt. No. 26-2 (Declaration of James Guillory)
    - Dkt. No. 26-3 (Declaration of David Randolph)
    - Dkt. No. 26-4 (Declaration of Micheal Cohen III)
    - Dkt. No. 26-7 (Declaration of Jean Johnson)

*Amici curiae* are directed to answer the following questions:

### MEDICAL

(1)   When residents display COVID-19 symptoms, as defined by the CDC, are they seen by medical staff?

(2)   When residents display COVID-19 symptoms are they tested for COVID-19?

(3)   Are there requests for a sick call based on suspected COVID-19 symptoms where there is no response?

(4) Is the response time for sick call requests of suspected COVID-19 symptoms for a resident to be seen by medical staff reasonable (assuming time of request and response time are recorded)?

(5) Are residents suspected of COVID-19 isolated from other people?

(6) Are new residents who enter DOC quarantined for 14 days?

(7) How frequently do DOC medical staff and/or Unity Health Care staff meet with DOC staff and residents to inform them about COVID-19 symptoms and precautions, and what information is conveyed?

(8) What visitor screening is conducted? Do the thermometers used for visitor screening work and are they used properly?

(9) How do the conditions of the quarantine housing compare to conditions in non-quarantine housing, and are residents deterred from reporting symptoms?

**ENVIRONMENTAL HEALTH & HYGIENE**

(1) What are the quantities of personal protective equipment and cleaning products in the DOC stockpile?

(2) Are residents provided with a weekly bar of soap?

(3) Do staff who interact with visitors and residents have access to, and wear, sufficient personal protective equipment (different personal protective equipment and/or other protective equipment)?

(4) Are staff and prisoner-workers given masks and gloves, particularly in food service (where workers also wear hair/beard guards), and are they instructed to wear that equipment?

(5) Do residents have access to cleaning supplies in sufficient quantity and concentration, including rags, to clean their cells?

(6) Do housing units, and particularly common spaces such as bathrooms and showers, appear to be sufficiently cleaned?

(7) Do professional cleaning crews clean hallways and common areas (not in housing units)? Do inmate details clean the housing units' common spaces?

(8) Are residents of CTF able to access hand sanitizer?

(9) Is social distancing possible in common areas in units, and what is the approximate size of common areas?

(10)    Approximately how many residents share a cell, and what is the approximate size of the cell?

(11)    Do all residents have access to sinks, soap, and toilets?