UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD BANKS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>QUINCY BOOTH, *et al.*,<br><br>*Defendants*. | Civil Action No. 20-0849 (CKK) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO JOIN
THE UNITED STATES AS A NECESSARY PARTY**

**INTRODUCTION**

Plaintiffs filed this putative class action lawsuit on March 31, 2020, alleging violations of their Fifth and Eighth Amendment rights while being held in custody by the District of Columbia Department of Corrections (DOC) during the COVID-19 pandemic. The lawsuit names as defendants DOC Director Quincy Booth and DOC Warden Lennard Johnson, both in their official capacities (collectively, DOC or the District). Along with their Complaint, plaintiffs filed an application for a temporary restraining order and a motion for a preliminary injunction. Among other forms of relief, plaintiffs seek the release of inmates currently housed in DOC facilities. The overwhelming majority of these inmates, however, have been charged and prosecuted by the United States, and many of them are currently held in DOC custody by United States Attorney's Offices, the Federal Bureau of Prisons, U.S. Marshals Service or U.S. Parole Commission. The United States thus has a clear interest in this case and should be joined as a necessary party.

**BACKGROUND**

Plaintiffs are DOC inmates currently housed in the Central Detention Facility (CDF) and

the Correctional Treatment Facility (CTF); two are pretrial detainees, and one awaits sentencing post-conviction.[1] *See* Compl. [1] ¶¶ 14–16. Plaintiffs filed this putative class action lawsuit on March 31, 2020, alleging violations of their Fifth and Eighth Amendment rights amid their confinement during the COVID-19 pandemic. Compl. ¶¶ 153-74. Among other forms of injunctive relief, they seek the court-ordered release of a sufficient number of individuals in DOC custody "so as to ensure that the number of prisoners remaining … can be housed consistently with CDC guidance on best practices to prevent the spread of COVID-19 …." *Id.* Relief Requested ¶ 2; Proposed Am. TRO Proposed Order [16-1] ¶ 1.

The District of Columbia is unique among jurisdictions, however, in that most of those in DOC custody have not been charged or prosecuted by the District. The Office of the Attorney General for the District of Columbia (OAG) prosecutes only a small number of misdemeanor crimes, most of which do not result in pre-trial or post-conviction detention. *See* D.C. Code §§ 23-101(a), (b). For all other offenses, criminal prosecutions are "conducted in the name of the United States by the United States [A]ttorney for the District of Columbia or his assistants." *Id.* § 23-101(c); *see also In re Crawley*, 978 A.2d 608, 609-10 (D.C. 2009). The United States Attorney's Office for the District of Columbia (USAO) conducts the majority of criminal prosecutions in the District.

In total, 1,442 individuals currently remain detained in CDF and CTF. *See* Chakraborty Decl., Ex. A ¶ 6. Of those, however, only 42 have been charged solely by OAG, and 1,400 are in custody in connection with proceedings involving the United States. *Id.* ¶ 4. This number includes individuals held pre-trial and pre-sentencing in cases brought by federal prosecutors, individuals

---

[1] Plaintiff Keon Jackson was being held post-conviction at the time of filing, Compl. [1] ¶ 17, but on information and belief he was released on April 2, 2020.

awaiting parole hearings with the U.S. Parole Commission, and individuals brought to the District for legal proceedings while serving sentences in other jurisdictions. *See id.* ¶ 6. Ordering the release of a significant number of those in DOC custody would thus primarily affect proceedings brought or authorized by the United States.

## LEGAL STANDARD

Federal Rule of Civil Procedure 19 sets forth when a necessary party must be joined in a proceeding. Under that rule, any person must be joined who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may either "(i) as a practical matter impair or impede the person's ability to protect the interest," or "(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

Ultimately, a court must make three determinations under Rule 19: "whether the absent party is necessary to the litigation; if so, whether the absent party can be joined in the litigation; and if joinder is infeasible, whether the lawsuit can nevertheless proceed 'in equity and good conscience.'" *Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1494 (D.C. Cir. 1995) (quoting Fed. R. Civ. P. 19(b)). These considerations require "a pragmatic decision based on practical considerations in the context of particular litigation." *Id.* at 1495.

## ARGUMENT

### I.     **The United States Is a Necessary Party.**

Rule 19 requires that the United States be joined as a necessary party in this action. The overwhelming majority of those currently in DOC custody have been charged and prosecuted by the United States. *See* Chakraborty Decl. ¶¶ 4, 6 (42 out of 1,442 inmates in DOC custody

prosecuted solely by OAG). Most of those housed in DOC facilities are there under the authority of the United States or another jurisdiction, not in cases prosecuted solely by OAG. *Id*.

Thus, if the Court is inclined to consider a reduction of the inmate population, or the release of inmates generally, the United States should be permitted to articulate and defend its interest in this action. The absence of the United States as a party would "as a practical matter impair or impede the [United States'] ability to protect [its] interest" in carrying out prosecutions from indictment to sentencing. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). It would also "leave [the District] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii).

The purpose of Rule 19 is to "promote[] fair treatment of nonparties in certain circumstances where their interests … are at risk from litigation between others." *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 464 (D.C. Cir. 2017). This is especially so where the requested relief would directly affect their interests. *See Kickapoo*, 43 F.3d at 1495 (state of Kansas was a necessary party to lawsuit over compact with federal Indian tribe where "Kansas has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by the relief that the Tribe seeks"). The United States has been deemed a required party in civil actions where the claims and relief at issue would implicate federal prosecutors' actions. *See, e.g.*, *Lewis v. Gov't of the District of Columbia*, 324 F.R.D. 296, 298 (D.D.C. 2018) (U.S. Attorney's Office was a necessary party where "any ruling the Court makes in this case will necessarily impact the operations of the U.S. Attorney's [O]ffice because it will impact the papering, i.e., processing, of arrestees charged with offenses prosecuted by that office") (internal quotation marks omitted). That is precisely the case here.

Beyond the restrictions imposed by the Prison Litigation Reform Act, 18 U.S.C. § 3626,

any requested relief involving the release of inmates may turn, at least in part, on their fitness for continued confinement, and the balancing of any danger they might pose to the community with any heightened health risks they might face from remaining incarcerated. Prosecutors, parole officials, and others on behalf of the United States have already conducted much of that analysis for inmates serving misdemeanor sentences, *see* April 14, 2020 Order, *In re Sentenced Misdemeanants*, 2020 CNC 000120 (Super. Ct. of D.C. March 31, 2020), and they should have the opportunity to represent the United States' interests in this case.

In addition, the DOC retains various legal responsibilities toward the United States with respect to those in its custody. All DOC inmates charged with felonies, for example, remain under the ultimate authority of the U.S. Attorney General. *See* D.C. Code § 24-101. Many DOC inmates have been detained by court order in proceedings conducted by the USAO. And because DOC holds many individuals for other federal proceedings pursuant to Intergovernmental Agreements between the District and the United States, *see* Chakraborty Decl. ¶ 6, other obligations could arise from those agreements subjecting the District to additional obligations. To order the release of those in DOC custody would thus "leave [the District] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Before the Court considers any request for relief that would possibly involve the release of those placed into DOC custody through lawful processes, the United States should be allowed to represent its interest in seeking fair and just criminal adjudications.

II.     **The United States May Be Easily Joined, and This Lawsuit Cannot Proceed in Equity and Good Conscience Without the United States as a Party.**

The United States may be promptly joined as a party at this stage of the case. No substantive issues have yet been adjudicated, and the question of what relief this Court might consider—should it even arrive at that question—implicates the United States' interests. Notably, the Superior Court

in *In re Sentenced Misdemeanants*, ordered the USAO to respond to the Public Defender Service's Emergency Motion immediately after it was filed, and the USAO has been involved in that case as well as the numerous others that were (or are) being adjudicated in Superior Court. *See, e.g.,* D.C. Super. Ct. Case Nos. 2017 CF1 018839, 2012 CF2 003582, 2019 CF1 010956, 2019 CF1 009074, 2018 CF1 006306, 2019 CF2 014874, 2019 CF2 016349, 2019 CF1 010958, 2020 CF3 003821. Thus, the USAO is aware of the facts and law underlying plaintiffs' request for relief here.

Even if joinder of the United States were not feasible, Rule 19 would require that the Court "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The rule provides four factors that can be considered in this analysis: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; "(2) the extent to which any prejudice could be lessened or avoided by" either "protective provisions in the judgment," "shaping the relief," or "other measures"; "(3) whether a judgment rendered in the person's absence would be adequate"; and "(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.*

The first three of these factors weigh heavily in favor of joining the United States as a necessary party or otherwise dismissing this action to the extent the relief it seeks is the release of inmates. Should the Court here consider the release of individuals prosecuted by the United States, the United States would have limited recourse to seek review of that decision. There are no obvious ways in which protective provisions, reshaping of relief, or other measures could change that outcome. And any judgment absent the United States would not adequately address all interests involved in the case, because the vast majority of persons held in DOC facilities are there under the authority of the United States. Even if plaintiffs could still receive the relief they seek, it is

apparent that all other factors would weigh in favor of not proceeding with this case absent the joinder of the United States as a necessary party.

## CONCLUSION

For the foregoing reasons, the Court should grant the District's motion and join the United States as a necessary party.

Dated: April 15, 2020.                      Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Micah Bluming
MICAH BLUMING [1618961]
PAMELA DISNEY [1601225]
Assistant Attorneys General
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
441 Fourth Street, N.W.
Suite 630 South
Washington, D.C. 20001
(202) 724-7272
(202) 730-1833 (fax)
micah.bluming@dc.gov

*Counsel for Defendants*