**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EDWARD BANKS, et al.,<br>      Plaintiffs<br><br>      v.<br><br>QUINCY L. BOOTH, *et al.*,<br>      Defendants | Civil Action No. 20-849(CKK) |

**ORDER**
(April 19, 2020)

For the reasons set forth in the accompanying Memorandum Opinion, it is, this 19th day of April, 2020, hereby

ORDERED that Plaintiffs' [5] Motion for a Temporary Restraining Order is GRANTED IN PART AND DENIED IN PART. Specifically, the Court ORDERS the following relief:

In light of the medical surveillance and monitoring that is occurring currently in the quarantine units, Defendants shall ensure that the triage process associated with sick call requests on the non-quarantine units is expedited and reflects appropriate sensitivity to the wide variety of symptoms associated with COVID-19 disease. Correctional officers and other staff who are in contact with inmates should ensure that the medical staff are promptly informed about inmates who present with symptoms of COVID-19 and medical staff should respond to the housing unit on an expedited basis. Any inmate grievances that include allegations of delay in medical assessment should be prioritized and submitted to the DOC medical director immediately. Additionally, in light of the fact that the DOC is relying on inmates to self-report symptoms of COVID-19, Defendants shall provide better documentation as to the dates and times of sick calls and urgent care calls, the inmates' reported symptoms, the dates and times the inmates are seen by medical professionals, and the outcomes to allow for better tracking of the response to inmates' complaints of COVID-19 symptoms.

If the Defendants are not already doing so, they shall that ensure that cell restrictions are appropriately monitored, tracked, and corrective action is undertaken on an expedited basis if warranted.

In instances in which inmates are transferred from the intake unit to a different unit before the 14-day quarantine period expires, Defendants shall ensure that appropriate housing, surveillance and monitoring is afforded to the inmate in the receiving unit.

Defendants shall consult with public health professionals regarding strategies that can be implemented to strengthen the COVID-19-related education program for both staff and inmates. Moreover, Defendants shall explore appropriate supports that can be provided on an expedited basis to both staff and inmates who are living and working in an extremely stressful and high-risk environment and are at substantial risk of exposure.

Defendants shall conduct additional staff training on the use of the non-touch, infrared thermometers consistent with manufacturer guidelines and provide guidance to staff regarding what to do when thermometers produce results that appear on their face to be inaccurate.

Defendants shall take immediate steps to provide consistent and reliable access to legal calls, personal telephone calls, daily showers, and clean clothing and clean linens to all inmates on isolation status.

Defendants shall ensure appropriate and consistent implementation of social distancing policies by addressing limitations in current staffing levels, supervisory oversight of line staff, and provide enhanced education related to the importance of social distancing.

Defendants shall communicate clear expectations, in writing, to correctional staff about the types of PPE required to perform the various supervision and operational functions that are conducted throughout the facility, including the PPE they should expect to be given on each shift for each specific category of post assignment; the proper donning, doffing and disposal of the PPE; and an explanation of the related rationale. Clear communication to staff regarding differences in risk exposures and providing consistent PPE over time could help lower anxiety levels among staff.

In addition, Defendants shall also ensure that all PPE issued is properly fitted. For example, N95 respirators must be properly fitted to ensure that they provide the intended protection. During the site visits that amici conducted, none of the correctional staff who were wearing N95 respirators in isolation units reported that they had been fitted for the respirators.

Defendants shall ensure that all DOC staff receive instruction on the proper disposal of PPE, and appropriate and accessible receptables for immediate disposal must be readily available. During the site visits, amici observed that receptables for disposal of PPE were not accessible on a consistent basis, including to staff assigned to isolation units at the CTF.

There is a critical need for the defendants to strengthen the environmental health and safety program at both the CDF and the CTF. It is recommended that the DOC immediately retain a registered sanitarian to oversee the environmental health and safety programs at both facilities and provide training so that cleaning tools and products are used properly. A registered sanitarian should bring the appropriate knowledge, oversight, and quality control necessary to mitigate at least some of the critical public health concerns that are evident in both facilities.

In addition to engaging a sanitarian, supervisory correctional staff must ensure that housing unit staff properly manage the work performed by the inmate detail workers. In order to accomplish that goal, correctional staff and detail workers require guidance from a sanitarian trained to oversee the facility's environmental health program.

In addition to engaging a sanitarian, the defendants shall consider contracting for professional cleaning services on the secure side of the facility at least until a sanitarian is hired to bolster the existing environmental health and safety program at both facilities. Additionally, proper cleaning supplies that have been sanitized regularly shall be immediately provided to each unit, and a schedule for cleaning common areas and cells shall be established and enforced.

Defendants shall reduce the extent to which common spaces encourage inmates to congregate in close quarters (e.g., around a single television in a small enclosed area, or next to one another in order to use telephones that are mounted closer than six feet apart). The effectiveness of this strategy would increase if Defendants were to consistently apply their stated

policy of allowing no more than small groups of inmates out of their cells at any given time. Whatever strategies Defendants adopt, increased active and direct supervision will be required by both housing unit correctional officers and the midlevel managers responsible for overseeing and supporting the correctional officers assigned to housing units. Enforcing social distancing standards as a public health measure is a new responsibility for correctional staff and they must be supported as they adjust to this new role. Moreover, Defendants shall assess whether any additional security staff are needed to provide appropriate supervision, on a unit-by-unit basis, taking into consideration the layout of the housing units, the number of inmates housed on the units, and the security designation of the unit, in order to enforce social distancing policies.

Finally, Defendants shall ensure that all inmates, including those on isolation, have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters.

As relief, the Court has adopted in general the recommendations set out by the amici in their final report. The Court has not set out each detail in the report which supports these recommendations. However, the Court expects Defendants to address those specific deficiencies set out in the final report, which support the recommendations, and to rectify those deficiencies.

**SO ORDERED.**

                                                                              /s/
                                              COLLEEN KOLLAR-KOTELLY
                                              United States District Judge