**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EDWARD BANKS**, *et al.*, <br><br> *Plaintiffs*, <br><br> **v.** <br><br> **QUINCY BOOTH**, *et al.*, <br><br> *Defendants*. | **Civil Action No. 20-0849 (CKK)** |

<u>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO**</u>
<u>**JOIN THE UNITED STATES AS A NECESSARY PARTY**</u>

**INTRODUCTION**

Defendants Quincy Booth and Lennard Johnson (collectively, the District) moved to join the United States of America (United States) as a necessary party under Federal Rule of Civil Procedure 19(a). Plaintiffs oppose, insisting that Warden Johnson is the only proper respondent in a *habeas* proceeding, and that the United States cannot be joined as a defendant. Plaintiffs present a false dichotomy, arguing that because they have styled this action as seeking *habeas corpus* relief, the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626, does not apply, and the involvement of the United States is "irrelevant." Pls.' Opp. at 1. Plaintiffs are incorrect. This is not solely a *habeas* proceeding, and even if it were, the United States is certainly permitted to acquiesce to its joinder in a habeas proceeding, as it has done here. Indeed, for habeas relief involving those inmates under a District of Columbia sentence, the U.S. Attorney's Office is the only proper respondent. The PLRA and a host of other legal issues further support the involvement of the United States, so that it can protect its interests and so that the District is not subject to

competing legal obligations. The Court should grant the District's motion to join the United States as a necessary party.

## ARGUMENT

### I.      This Is Not Solely a *Habeas* Matter, and Regardless, the United States Is Still a Proper Party.

Plaintiffs argue that "the *only* proper respondent in a federal habeas case is the immediate physical custodian of the inmate." Pls.' Opp. at 1 (emphasis in original). But that conclusion only takes plaintiffs so far—this is not just a *habeas* matter, because plaintiffs have also brought claims under 42 U.S.C. § 1983 (Section 1983). It is not an either/or proposition. *Cf.* Pls.' Opp. at 2 ("[P]laintiffs' conditions claims arise under Section 1983 also, but these are not the claims for release[.]").

Plaintiffs state categorically that the United States cannot be a respondent in a federal *habeas* action, Pls.' Opp. at 3, but they are incorrect. *See Lane v. United States*, Civil Action No. 14–731, 2015 WL 6406398, *3 (D.D.C. Oct. 21, 2015) (noting that the United States can waive the "immediate custodian" defense in *habeas* proceedings) (discussing *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004)).[1] In its response to the District's motion to join, the United States noted that it did not oppose the motion, agreeing with the District:

> [O]rdering the release of a significant number of the individuals currently confined in the D.C. Jail—the relief sought by Plaintiffs in this action—would primarily affect proceedings brought or authorized by the United States. Accordingly, if the Court is inclined to consider a reduction of the inmate population at the D.C. Jail, or the release of inmates generally, the United States has an obvious interest in the imposition of any such remedies, and should be permitted to articulate and defend that interest in this case.

---

[1]      In *Lane*, a *pro se* prisoner incarcerated in a federal penitentiary in Kentucky brought a *habeas* action against the United States. 2015 WL 6406398 at *1. The court found that the United States had waived the "immediate custodian" defense because it "responded to the petition without invoking" that rule and did so "fully cognizant of the fact that the United States cannot be sued in its own name without the unambiguous consent of Congress[.]" *Id*. at *3.

U.S. Resp. [46] at 1.

The United States did not raise the immediate custodian defense and plaintiffs' invocation of it here does not mandate the exclusion of the United States as a party. *See also Rhines v. Weber*, 544 U.S. 269, 276 (2005) (trial court had discretion to stay "mixed" *habeas* petition to allow exhaustion of unexhausted claims in state court).[2] Plaintiffs' suit here is similarly "mixed," seeking habeas relief and bringing claims under Section 1983. *See* Compl. ¶¶ 11–12.

In addition, plaintiffs' cited authorities do not involve a class action through *habeas*, which raises a host of *other* legal questions that the United States has an interest in addressing (because it is the prosecuting authority for essentially the entire putative class). The absence of the United States as a party would "as a practical matter impair or impede the [United States'] ability to protect [its] interest" in the oversight of inmates under its authority. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). Any large-scale release of inmates would implicate the traditional factors analyzed by prosecutors in cases of early release, *i.e.*, the inmates' fitness for continued confinement and the balancing of any danger they might pose to the community. Prosecutors, parole officials, and others on behalf of the United States are continuing to conduct that analysis for inmates serving misdemeanor sentences, *see* April 14, 2020 Order, *In re Sentenced Misdemeanants*, 2020 CNC 000120 (Super. Ct. of D.C. March 31, 2020), and they should have the opportunity to represent the United States'

---

[2]   In *Bailey v. Fullwood*, 780 F. Supp. 2d 20 (D.D.C. 2011), a *pro se* plaintiff sued the U.S. Parole Commission, alleging violations of parole regulations and the Privacy Act. *Id*. at 22. The Commission urged the court to construe the suit as a writ of habeas corpus and dismiss it, because the plaintiff had not named as a respondent the warden of the facility in Pennsylvania in which he was incarcerated. *Id*. (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004)). The court, however, *sua sponte* joined the warden as a respondent and then severed the Privacy Act claims and transferred the *habeas* claim to the appropriate court (holding that it lacked personal jurisdiction over the warden). *Id*. at 25–26.

interests in this case. Similarly, the federal Bureau of Prisons (BOP) should also be given an opportunity to weigh in on its interpretation of statutes, like the transitional release and home confinement provisions of 18 U.S.C. § 3624(c) that the BOP Director is responsible for implementing.

An implicit premise of plaintiffs' *habeas* argument appears to be that such relief is available despite pretrial detainees' available remedies in Superior Court proceedings. As the prosecuting authority in such proceedings, the United States obviously has an interest in the determination of that proposition. But that proposition is dubious. *See In re Al-Nashiri*, 835 F.3d 110, 130 n. (D.C. Cir. 2016) ("[W]e observe that federal courts routinely decline to allow claims that can be raised in pretrial motions and addressed on direct appeal to instead be raised via pretrial habeas petition, whether trial is set to take place in federal court, state court, or a court-martial.") (citing *Henry v. Henkel*, 235 U.S. 219, 229 (1914) (federal prosecution) ("[T]he hearing on habeas corpus is not in the nature of a writ of error nor is it intended as a substitute for the functions of the trial court …. [A defendant] cannot, in either case, anticipate the regular course of proceeding by alleging a want of jurisdiction and demanding a ruling thereon in habeas corpus proceedings.")); *In re Justices of the Superior Court Dep't of the Mass. Trial Court*, 218 F.3d 11, 17–19 (1st Cir. 2000) (state prosecution) ("[T]he federal courts have routinely rejected petitions for pretrial habeas relief raising any variety of claims and issues …. Defendants are not entitled to consideration of their federal habeas claims until a time when federal jurisdiction will not seriously disrupt state judicial processes." (internal quotation marks omitted))).

Plaintiffs' cited authorities also fail to acknowledge the unique situation of D.C. Jail inmates. Ordinarily, the *habeas* remedy for those under sentence pursuant to the D.C. Code is D.C. Code § 23-110; although that provision does not apply to pretrial detainees, Section 23-110(c)

nevertheless provides that the "prosecuting authority" is served to respond to such requests for relief. That prosecuting authority, for the vast majority of inmates in Department of Corrections (DOC) facilities, is the U.S. Attorney's Office (USAO). Moreover, some D.C. Jail inmates *are* under a D.C. sentence (even excluding misdemeanants). Such inmates include those who are awaiting designation or assignment to a federal facility, and those who might be awaiting additional charges. In that case, the USAO is the *only* proper respondent in *habeas*. D.C. Code § 23-110(c); s*ee Swain v. Pressley*, 430 U.S. 372, 378 (1977) (explaining that, in enacting Section 23-110, Congress sought to vest the Superior Court with exclusive jurisdiction over most collateral challenges by prisoners sentenced in that court).

**II.**   **The PLRA Applies and Supports the Involvement of the United States, Not Only To Protect Its Interests But To Protect the District Against Competing Legal Obligations.**

By its express terms, the PLRA applies to Section 1983 suits, but not to *habeas* petitions. 18 U.S.C. § 3626(g)(2) (PLRA applies to civil suits "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison[.]"). Traditionally, *habeas* petitions were to challenge the detention, not the conditions of confinement. *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody.").

Here, plaintiffs brought suit under both Section 1983 and *habeas*, challenging the conditions of DOC facilities and urging the release of "as many people as possible[.]" Compl. at 34–37. The D.C. Circuit has made clear that a person in custody may challenge both the detention and the conditions of confinement through the writ. *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014). Because plaintiffs challenge the conditions of confinement in DOC facilities, the PRLA

is clearly implicated.[3] Plaintiffs also seek relief through *habeas*, the "traditional remedy" for which is "outright release." *Id*. at 1035. Plaintiffs' two-pronged request for relief favors the joinder of the United States, which is responsible for the vast majority of persons in DOC facilities.

The Office of the Attorney General for the District of Columbia (OAG) prosecutes only a small number of misdemeanor crimes, most of which do not result in pre-trial or post-conviction detention. *See* D.C. Code §§ 23-101(a), (b). For all other offenses, criminal prosecutions are "conducted in the name of the United States by the United States [A]ttorney for the District of Columbia or his assistants." *Id.* § 23-101(c); *see also In re Crawley*, 978 A.2d 608, 609-10 (D.C. 2009). The USAO conducts the majority of criminal prosecutions in the District of Columbia, a fact which plaintiffs cannot rebut.

More than 97% of persons in DOC custody are there under some federal authority like the United States Attorney's Offices, the FOP, U.S. Marshals Service and U.S. Parole Commission. *See* Chakraborty Decl., ¶ 6. Ordering the release of a significant number of those in DOC custody would primarily affect proceedings brought or authorized by the United States.

As explained previously, the United States has "an interest relating to the subject of the action," and adjudicating this case in its absence may "as a practical matter impair or impede [the United States'] ability to protect the interest," Fed. R. Civ. P. 19(a)(1)(B), and could leave the

---

[3]     The PLRA, among other provisions, constrains the authority of courts to order preliminary injunctive relief, stating that such relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The PLRA imposes greater restrictions on the release of prisoners to remedy prison conditions. *Id*. § 3626(a)(3) (court shall not enter a prisoner release order unless "a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation" and "the defendant has had a reasonable amount of time to comply with the previous court orders."). *See also id.* § 3626(a)(3)(B) ("In any civil action in Federal court with respect to prison conditions, a prisoner release order shall be entered only by a three-judge court[.]").

District "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). The DOC retains various legal responsibilities toward the United States with respect to those in its custody. All DOC inmates charged with felonies, for example, remain under the ultimate authority of the U.S. Attorney General. *See* D.C. Code § 24-101. Many DOC inmates have been detained by court order in proceedings conducted by the USAO. And intergovernmental agreements between the District and the United States impose obligations for the care and confinement of those held under some form of federal authority.[4]

To order the release of those in DOC custody would thus "leave [the District] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Before the Court considers any request for relief that would possibly involve the release of those placed into DOC custody through lawful processes, the United States should be allowed to represent its interest in seeking fair and just criminal adjudications.

## CONCLUSION

For the foregoing reasons and those stated in the District's motion, the Court should grant the motion and join the United States as a necessary party.

Dated: April 21, 2020.                         Respectfully submitted,

                                               KARL A. RACINE
                                               Attorney General for the District of Columbia

---

[4]      For instance, IGA No. 16-00-0016, between the U.S. Marshals Service, other federal agencies, and the DOC, establishes the guidelines (and reimbursement) for the District's housing and transport of federal inmates in its custody. *See* DOC Policy & Procedure 2120.2D (eff. May 7, 2015), available online at *https://doc.dc.gov/sites/default/files/dc/sites/ doc/publication/attachments/PP%202120.2D%20DOC%20Reimbursement%20for%20Federal %20Prisoners%2005-07-2015.pdf*.

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Andrew J. Saindon
MICAH BLUMING [1618961]
PAMELA DISNEY [1601225]
Assistant Attorneys General
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
441 Fourth Street, N.W.
Suite 630 South
Washington, D.C. 20001
(202) 724-7272
(202) 730-1833 (fax)
andy.saindon@dc.gov

*Counsel for Defendants*