**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **EDWARD BANKS**, *et al.*, | |
| *Plaintiffs*, | |
| **v.** | **Civil Action No. 20-849 (CKK)** |
| **QUINCY BOOTH**, *et al.*, | |
| *Defendants*. | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY ORDER OF APPROVAL AND SETTLEMENT**</u>

**INTRODUCTION**

Plaintiffs Edward Banks, D'Angelo Phillips, Keon Jackson, and Eric Smith, and Defendants Thomas Faust and Wanda Patten[1] (collectively, the Parties) jointly move this Court for preliminary approval of the settlement agreement — attached as Exhibit A — reached in the above-captioned matter. Upon final approval by the Court, this settlement will conclude nearly two years of litigation relating to the COVID-19 response carried out by the District of Columbia Department of Corrections (DOC) at the D.C. Jail. The proposed settlement resulted from good faith, arm's-length negotiations among experienced counsel for the Parties.

For the reasons set forth below, the settlement is fair, reasonable, and adequate and serves the best interests of the proposed class members. The settlement is subject to final Court approval after notice to the class and class members' opportunity to object. Therefore, for the reasons

---

[1] The Complaint named District of Columbia Department of Corrections (DOC) Director Quincy Booth and Warden Lennard Johnson as defendants, both in their official capacities. Since then, Director Quincy Booth has been replaced by Acting Director Thomas Faust and Warden Lennard Johnson has been replaced by Deputy Director of Operations Wanda Patten. The new officials will be "automatically substituted as a party." Fed. R. Civ. P. 25(d).

discussed below and pursuant to Federal Rule of Civil Procedure 23, the Parties request that the Court issue an Order granting preliminary approval of the Parties' proposed class action settlement (the "Settlement"), approving the proposed notice (the "Notice") and method of providing notice of the proposed settlement to the Class, and scheduling a fairness hearing.

## BACKGROUND

### A. Facts and Procedural History

The Court is familiar with the background allegations in this case. Therefore, the Parties provide only a brief summary below, with particular emphasis on the allegations most germane to the proposed settlement.

This litigation arose from the alleged conditions at the D.C. Jail during the present global COVID-19 pandemic beginning in March of 2020. According to Plaintiffs, correctional facilities have proven to be particularly vulnerable to COVID-19 outbreaks because their congregate settings force incarcerated people into close contact with each other and jail staff, including corrections officers. Public health experts have issued guidance in light of the extraordinary risk COVID-19 poses to those in correctional facilities. The Centers for Disease Control's ("CDC") COVID-19 guidance documents for correctional facilities recommend, among other things, social distancing to increase space between incarcerated people to six feet.[2] For instance, because hygiene is vital for limiting the spread of COVID-19, the guidance states that prisons should provide a no-cost supply of soap to incarcerated/detained persons, sufficient to allow frequent hand washing.[3]

---

[2] CTRS. DISEASE CONTROL & PREVENTION, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (last visited Dec. 24, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

[3] *Id.*

On March 30, 2020, Plaintiffs — two pretrial detainees and two postconviction detainees at the D.C. Jail — filed suit against Defendants, seeking relief on behalf of a class of all DOC residents. *See* Dkt. No. 1. They alleged that Defendants violated their Fifth and Eighth Amendment rights by exposing them "to a substantial — indeed grave — risk of serious harm" from COVID-19 exposure as a result of their confinement, and by acting with deliberate indifference to that risk. *Id.* ¶ 159. Plaintiffs filed an application for a temporary restraining order, *see* Dkt. No. 5; the Court appointed *amici* to inspect the jail and provide a report, *see* Dkt. No. 34. On April 20, 2020, the Court granted in part and denied in part the TRO. *See* Dkt. No. 49.

The Court reappointed *amici* to inspect the jail and provide additional reports on conditions in Defendants' facilities. Dkt. No. 62. Plaintiffs subsequently moved for a preliminary injunction, which the Court granted in part and denied in part on June 18, 2020. *See* Dkt. No. 99.

After the Court entered the preliminary injunction, Defendants moved to vacate the injunction, *see* Dkt. No. 105, and also noticed an appeal to the D.C. Circuit, *see* Dkt. No. 106. The Court again appointed *amici* to inspect the jail facilities and report on the conditions therein, *see* Dkt. No. 126, and then denied Defendants' motion, *see* Dkt. No. 143.

On appeal, the D.C. Circuit concluded that the preliminary injunction had automatically expired pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(2), and thus held that the appeal was moot. *See Banks v. Booth*, 3 F.4th 445 (D.C. Cir. 2021). After the injunction was vacated, the Parties entered into settlement negotiations with the assistance of the D.C. Circuit's mediation program. *See* Dkt. No. 164. After months of intensive negotiations, and with the assistance of the court-appointed Mediators, the Parties have now reached the proposed settlement.

**B. Terms of the Proposed Settlement**

As detailed in Exhibit A, the proposed Settlement consists of several actions Defendants have agreed to take over a six-month period in exchange for a full release of claims by all Class Members. Monetary relief is not part of the proposed Settlement, and Plaintiffs' counsel will not receive any attorneys' fees. The following is a summary of the material terms of the Settlement.

*1. Settlement Class*

The Settlement Class is defined as all persons who were confined in the DOC Central Detention Facility (CDF) or Correctional Treatment Facility (CTF) for any amount of time from March 30, 2020, to the Expiration Date of the Settlement Agreement.

*2. Data and Reporting*

The Settlement Agreement requires Defendants to provide to Plaintiffs' counsel information at defined intervals related to COVID-19 at DOC facilities, including vaccination rates, educational materials about vaccines, and data related to infection rates. Defendants also agree to provide Plaintiffs' counsel with DOC policies and procedures related to COVID-19 and any updates or modifications to those policies that are adopted during the duration of the Settlement Agreement.

*3. Substantive Policies*

Under the Settlement Agreement, Defendants agree to implement or continue implementing a range of important precautionary measures to prevent the spread of COVID-19, including:

- Providing swift medical care to residents who present with COVID-19 symptoms;
- Conducting contact tracing for residents and staff who test positive for COVID-19;
- Requiring staff to wear face masks;
- Promoting social distancing;
- Ensuring sanitation and hygiene supplies, including instructions for their proper use;
- Allowing out-of-cell time and outdoor recreation time as reasonably possible; and
- Ensuring that conditions on quarantine and isolation units are not punitive.

### 4. *Confirmation By Inspection*

The Agreement provides for the appointment of Dr. Carlos Franco-Paredes, Associate Professor, Medicine-Infectious Disease, at the University of Colorado School of Medicine, as an Inspector. Dr. Franco-Paredes will conduct up to five unannounced inspections of DOC facilities during a six-month period. Dr. Franco-Paredes will report to the Parties on the DOC's compliance with the seven "substantive policies" listed above. If Dr. Franco-Paredes reports substantial compliance with any of those seven policies during two consecutive inspections, he will not assess DOC's compliance with that area during future inspections.[4] The District of Columbia will pay Dr. Franco-Paredes reasonable costs and fees for his work under the Agreement.

### 5. *Duration*

The Agreement will remain in place for six months unless it is terminated by mutual consent of the Parties.

### 6. *Enforcement*

The Parties have agreed that any disputes over enforcement of the Settlement Agreement will first be brought to the court-appointed Mediators, who are already familiar with the Parties and facts of this case, before seeking relief from the Court. In the event the Parties are unable to resolve any dispute, the Court retains jurisdiction over this action for the limited duration of the Settlement Agreement. The Parties stipulate that the Settlement Agreement is not a consent decree but further stipulate, in spite of that fact, that the Agreement satisfies 18 U.S.C. § 3626(a)(1)(A) and request that the Court make the findings in that section.

---

[4] If Dr. Franco-Paredes becomes unable to conduct subsequent inspections, a new inspector will be appointed by joint agreement of the Parties. If the Parties cannot agree on a new inspector within 21 days of learning that Dr. Franco-Paredes is no longer able to conduct inspections, the Parties must seek the assistance of the Mediators.

**LEGAL STANDARD**

Rule 23(e)(1) governs the process for preliminary approval of a proposed class settlement and notice to the class. Fed. R. Civ. P. 23(e)(1). Specifically, the rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

**ARGUMENT**

**A. This Court Should Grant Preliminary Approval of the Settlement Terms.**

*1. The Proposed Settlement Meets the Factors for Preliminary Approval.*

Rule 23(e)(2) directs the Court to determine whether the proposal is "fair, reasonable, and adequate," taking into consideration whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . and (D) the proposal treats class members equitably relative to each other." Preliminary approval "lies within the sound discretion of the court." *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 106 (D.D.C. 2013) (citation omitted). "The exercise of this discretion, however, is constrained by the 'principle of preference' favoring and encouraging settlements in appropriate cases." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004) (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999)).

All four factors under Rule 23(e)(2) weigh in favor of the conclusion that the proposal is fair, reasonable, and adequate. Accordingly, the Court should approve the settlement agreement.

       a.   *The Class Representatives and Class Counsel Have Adequately Represented the Class.*

Courts evaluate two criteria to determine whether absent class members have been adequately represented: (1) "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class," and (2) "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Stephens v. Farmers Rest. Grp.*, Civil Action No. 17-1087, 2019 WL 2550674, at *4 (D.D.C. June 20, 2019) (internal quotation marks omitted) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). When a proposed settlement would resolve multiple types of claims, "the reviewing court must look for 'structural assurance[s] of fair and adequate representation for the diverse groups and individuals affected.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997)). The class representatives have adequately represented the class because their interests are aligned with those of the class and they have been active and engaged with the proceedings. The class representatives allege that they have suffered the same injuries as other members of the class, assuring that the interests of all affected individuals are captured in the agreement. *See Stephens*, 2019 WL 255064, at *4. Further, the class representatives played an active part in the litigation and mediation process. The class representatives were interviewed extensively by counsel for Plaintiffs as part of his pre-lawsuit investigation and communicated with counsel throughout the litigation to receive status updates.

Class counsel has adequately represented the class. Class counsel include experienced and dedicated lawyers from the Public Defender Service for the District of Columbia, the ACLU of the District of Columbia, and Munger, Tolles & Olson LLP. These lawyers have experience litigating complex civil rights class action lawsuits in federal court concerning prisoner rights. Undersigned counsel have also conducted a thorough investigation concerning conditions at the

D.C. Jail as they relate to COVID-19, including working with dozens of inmates and consulting with, and hiring, qualified experts. Further, the undersigned have sufficient financial and human resources to litigate this matter and are prepared to "fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), as they have already done in the nearly two years of litigating this case and negotiating the proposed settlement.

> b. *The Settlement is the Product of a Good-Faith, Informed, and Arm's-Length Negotiation.*

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104 (citation and internal quotation marks omitted). The settlement reached here is such a settlement.

After extensive litigation over the course of nearly two years, including the Court's repeated appointment of *amici* inspectors to deliver detailed oral and written reports, the Parties engaged in mediation over four months under the guidance of the Court-appointed Mediators to reach the Settlement Agreement. Counsel for Plaintiffs and Defendants engaged in extensive, adversarial negotiations for these months and exchanged numerous proposals.

The negotiations were informed not only by the detailed reports of *amici* inspectors but also by many interviews with current and former D.C. jail residents and by evidence exchanged prior to, and during, mediation. That evidence provided both sides with sufficient information to assess the merits of Plaintiffs' case and to weigh the benefits and costs of further litigation.

> c. *The Settlement Provides Adequate Relief.*

The Court "must evaluate the relief provided in the proposed settlement against the relative strength of plaintiffs' case, including their ability to obtain recovery at trial." *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 195 (D.D.C. 2011).

While Plaintiffs and Plaintiffs' counsel are confident in the strength of their case, they are also pragmatic in their awareness of the various defenses available to Defendants, as well as the risks inherent to litigation. Defendants maintain that Plaintiffs' constitutional rights have not been violated, and there are significant procedural hurdles to relief through a litigated judgment. Most significantly, Plaintiffs contend that it is clear from the rapid spread of the Omicron variant in the community (and at the D.C. Jail) that swift relief is what is most necessary to protect the health and safety of the class. Even if Plaintiffs were successful through litigation, and even if Plaintiffs won a court order imposing more stringent requirements on Defendants, Defendants could seek appellate review of any decision or class certification, potentially delaying any remedy for the class past the time when it would be most effective in protecting class members.

Importantly, the Settlement provides substantial and immediate relief to Plaintiffs. As a result of the Settlement, Plaintiffs will continue to have access to hygiene and cleaning supplies, information about protecting themselves, and timely medical care. DOC's compliance with the Settlement will be assessed by an independent, expert epidemiologist with experience in reporting on COVID prevention compliance in prisons.[5] This Agreement will ensure safer conditions in DOC facilities for Plaintiffs far sooner than a litigated outcome. Even expedited discovery and summary judgment briefing would take months and would involve substantial fact and expert discovery, lengthy pretrial proceedings, and, ultimately, a trial and potential appeals. Under the circumstances of the Omicron variant of COVID-19 now spreading throughout the world, the

---

[5] Dr. Franco-Paredes's CV is attached here is Exhibit C. Notably, Dr. Franco-Paredes served as the inspector of several correctional facilities during the COVID-19 pandemic, including the Los Angeles County Jail System, the Weld County Jail System, and the Prince George's County Jail System.

Parties determined that the benefits of the proposed Settlement outweigh the risks of continued litigation.

Plaintiffs did not seek any monetary relief in their Complaint, and the proposed Settlement therefore does not include any damage awards. Moreover, Plaintiffs' counsel have agreed not to seek attorneys' fees in this case; accordingly, there is no concern here that Plaintiffs' counsel have reached an agreement to benefit themselves rather than their clients.

> d.    *The Settlement Treats the Class Equitably.*

The relief provided for in the proposed Settlement applies uniformly to all members of the class. There is no differential treatment between different class members or groups of class members, and thus, there are no potential conflicts among class members.

**B. The Court Should Approve the Proposed Settlement Class Notice.**

Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether a class is certified under Rule 23(b)(1), (b)(2), or (b)(3). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (citation omitted).

The proposed notice, which is attached as Exhibit B, meets these criteria because it fairly describes the issues involved in this lawsuit and the terms of the proposed settlement. It will reach

all Class Members because it will (if the Court approves) be posted in all units of the jail, where all residents will easily be able to read it. Class Members will also be able to ask their counselors or case managers for a copy of the settlement.

### C.  The Court Should Schedule a Fairness Hearing.

The last step in the settlement approval process is a Fairness Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement Agreement. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. Any Class Members who oppose the proposed Settlement will have an opportunity, in writing or orally, to persuade the Court not to approve the Settlement. The Court will determine at or after the Fairness Hearing whether the Settlement should be approved and whether to enter a final order under Rule 23(e).

The Parties request that the Court schedule a Fairness Hearing on April 12, 2022, if that is convenient for the Court. Plaintiffs will file their motion for final approval of the Settlement no later than seven days prior to the Fairness Hearing.

### CONCLUSION

For the foregoing reasons, the Parties request that the Court grant their joint motion and enter the attached proposed order.

Dated: February 14, 2022.                              Respectfully submitted,

*/s/ Zoé Friedland*                                    KARL A. RACINE
Zoé E. Friedland (Bar ID D00516)                       Attorney General for the District of Columbia
Jonathan W. Anderson (D.C. Bar # 475306)
Jenna Cobb (D.C. Bar # 979506)                         CHAD COPELAND
Hanna Perry*                                           Deputy Attorney General
Public Defender Service for the District of            Civil Litigation Division
Columbia
633 Indiana Avenue N.W.                                */s/ Fernando Amarillas*
Washington, D.C. 20004                                 FERNANDO AMARILLAS [974858]
Tel. 202-824-2524                                      Assistant Deputy Attorney General

Fax 202-824-2525
*Member NY Bar; Practicing in DC under DC App.
R. 49(c)(9)(B)

/s/ Scott Michelman
Scott Michelman (D.C. Bar # 1006945)
Arthur B. Spitzer (D.C. Bar # 235960)
Michael Perloff (D.C. Bar # 1601047)
American Civil Liberties Union Foundation
    of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
Tel. 202-457-0800
smichelman@acludc.org

/s/ Jacob S. Kreilkamp
Jacob S. Kreilkamp (pro hac vice)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071-3426
Tel.: 213-683-9260
Fax: 213-593-2960
jacob.kreilkamp@mto.com

/s/ Rachel G. Miller-Ziegler
Rachel G. Miller-Ziegler (D.C. Bar # 229956)
Brendan B. Gants (D.C. Bar # 1031419)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500E
Washington DC, 20014
Tel.: (202) 220-1100
rachel.miller-ziegler@mto.com

Counsel for Plaintiffs

/s/ Micah Bluming
MICAH BLUMING [1618961]
PAMELA DISNEY [1601225]
Assistant Attorneys General
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-7272
(202) 730-1833 (fax)
micah.bluming@dc.gov
pamela.disney@dc.gov
andy.saindon@dc.gov

Counsel for Defendants