# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EDWARD BANKS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> QUINCY BOOTH, in his official capacity as Director of the District of Columbia Department of Corrections, *et al.*, <br><br> *Defendants*. | No. 1:20-cv-00849 (CKK) |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs and Class Representatives Edward Banks, D'Angelo Phillips, Keon Jackson, and Eric Smith have sued Defendants Thomas Faust and Wanda Patten,[1] in their official capacities as Director of the District of Columbia Department of Corrections and Warden of the D.C. Jail, respectively, in this matter, *Banks, et al. v. Booth, et al.*, Civil Action No. 20-849 (D.D.C.), asserting claims of constitutional violations pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2241, and seeking declaratory and injunctive relief ("Lawsuit").

In reliance upon the representations contained here, and in consideration of the mutual promises, covenants, and obligations in this Settlement Agreement ("Agreement"), and for good and valuable consideration, Plaintiffs and Defendants, through their undersigned counsel, agree and stipulate as follows:

---

[1] This suit was initially brought against Director Quincy Booth and Warden Lennard Johnson, in their official capacity. Director Quincy Booth has been replaced by Acting Director Thomas Faust and Warden Lennard Johnson has now been replaced by Deputy Director of Operations Wanda Patten. The new officials will be "automatically substituted as a party." FED. R. CIV. P. 25(d).

I.     **Definitions**

A.     "Agreement" means this Settlement Agreement.

B.     "Class Members" means all persons confined in the Central Detention Facility or the Correctional Treatment Facility from March 30, 2020, until the Expiration Date of this Agreement.

C.     "CDF" means the Central Detention Facility.

D.     "CTF" means the Correctional Treatment Facility.

E.     "Court" means the United States District Court for the District of Columbia.

F.     "Defendants" means Thomas Faust and Wanda Patten, in their official capacities as Acting Director of the District of Columbia Department of Corrections and Deputy Director of Operations of the D.C. Jail, respectively.

G.     "DOC" means the District of Columbia Department of Corrections.

H.     "Expiration Date" means the 181st day after this Agreement has been executed by all Parties, whether or not it has been approved by the Court.

I.     "Fully Vaccinated" means the individual in question has received "a 2-dose series of an mRNA COVID-19 vaccine (Pfizer-BioNTech or Moderna), or a single-dose COVID-19 vaccine (Johnson & Johnson's Janssen vaccine)." "Staying up to Date with Your Vaccine," Center for Disease Control (Jan. 5, 2022).[2]

J.     "Inspector" means Dr. Carlos Franco-Paredes, Associate Professor, Medicine-Infectious Disease, at the University of Colorado School of Medicine, or a successor agreed upon by the Parties.

---

[2]     https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html?s_cid=11350:cdc%20guidance%20fully%20vaccinated:sem.ga:p:RG:GM:gen:PTN:FY21

K.     "Isolation Unit" means any housing unit designated only for DOC residents who have tested positive for COVID-19.

L.     "Mediators" means the mediators assigned to this case from the mediation program of the United States Court of Appeals for the District of Columbia Circuit.

M.     "Parties" means all parties to this Settlement Agreement, to include all Plaintiffs and all Defendants.

N.     "Plaintiffs" means the named plaintiffs in this action, Edward Banks, D'Angelo Phillips, Keon Jackson, and Eric Smith, and all other members of the settlement class as defined by the Court.

O.     "Quarantine Unit" means any housing unit on which all residents have had close contacts with someone who has tested positive for COVID-19 on one or more housing units in which no known infected residents, and no residents who are not suspected to be infected, reside.

P.     "Residents" means people incarcerated at the Department of Corrections' Central Detention Facility or Correctional Treatment Facility.

**II.    Documentation and Reporting**

1.    Vaccination rates of staff and residents

While this Agreement is in effect (as provided in Part VI below), DOC will provide Plaintiffs' counsel on the fifth day of each month (or the next business day, if the fifth day of the month is not a business day) the percentage of staff and residents who were fully vaccinated as of the first of that month. Under this Agreement, on April 5, 2022, for example, DOC would report the percentage of staff fully vaccinated as of April 1, 2022, and the percentage of residents in the facility on April 1, 2022 who were fully vaccinated.

2.   Vaccine educational materials provided to residents and staff

While this Agreement is in effect (as provided in Part VI below), DOC will provide Plaintiffs' counsel all educational materials regarding COVID-19 vaccines, whether written documents, posters, or videos, that are provided to residents and/or staff. These materials will be provided once unless they are subsequently substantively changed or updated. Subsequently changed materials – those with changes that are substantive in nature – shall be provided within one week of the changes. To the extent educational materials are included in written policies, refer to section II.4, below.

3.   Testing and hospitalization information

While this Agreement is in effect (as provided in Part VI below), DOC will provide Plaintiffs' counsel on the fifth day of each month (or the next business day, if the fifth day of the month is not a business day) the number of COVID-19 tests administered to residents and the number of residents who tested positive for COVID-19 during the preceding month. DOC will share with Plaintiffs' counsel at least weekly the number of residents hospitalized due to COVID-19 and continue to share publicly on the District of Columbia's "Public Safety Agency COVID-19 Case Data" website the number of deaths due to COVID-19.

4.   DOC's written policies

DOC has already provided Plaintiffs' counsel, through discovery or otherwise, the following written policies:

i.      DOC Policy and Procedure 4910.11 "Escorted Trips"

ii.     DOC Policy and Procedure 1010.5H "Chain of Command"

iii.    DOC Policy and Procedure 5031.1A "Pandemic Flu Plan"

     iv.     Central Detention Facility Post Order "Medical Restrictive Housing Unit (Isolation)"

     v.     Unity Health Care, Inc., "Coronavirus Protocol"

     vi.     Unity Health Care, Inc. Policy CF 210, "Medical Plan for Pandemic Influenza"

To the extent not already disclosed, DOC will provide Plaintiffs, within 21 days of the Effective Date, all written policies regarding:

     i.     Vaccine requirements and education for staff

     ii.     Vaccine distribution and education for residents

     iii.     Masking & PPE

     iv.     Social Distancing

     v.     Testing & Contact Tracing

     vi.     Quarantining & Isolation

     vii.     Sanitation & Hygiene

     viii.     Recreation

     ix.     Symptom Screening

If any of the written policies described in this subpart change in a substantive manner, DOC will provide those policies to Plaintiffs within five business days of the change.

5. Contracts for sanitation at DOC facilities

Within 21 days of the Effective Date, DOC will provide Plaintiffs the contracts for sanitation at DOC facilities. If the contracts change, or if DOC enters into a new contract or renews an existing contract, DOC will provide those updates to Plaintiffs within five business days of the new, renewed, or changed contract taking effect.

6.   Single cells

While this Agreement is in effect (as provided in Part VI below), on the fifth day of each month (or the next business day, if the fifth day of the month is not a business day), DOC will provide Plaintiffs' counsel the percentage of residents who were housed in single cells in CDF and CTF as of the first of that month, and the percentage of total cells in CDF and CTF that were unoccupied as of the first of that month.

7.   Quarantine units

On the Effective Date, and every 14 days thereafter (or on the next business day, if the 14th day is not a business day) while this Agreement is in effect (as provided in Part VI below), DOC will provide to Plaintiffs' counsel a list of the housing units that are on quarantine and the expected date that each housing unit will be taken off quarantine status if there are no new positive tests on that unit.

III.   **Conditions for Residents**

1.   Medical access

In at least 90 percent of cases, DOC will provide medical care to residents within 24 hours of receipt of a sick call request for medical care related to COVID-19 symptoms. DOC will provide 100 percent of those residents with medical care within 48 hours.

2.   Contact tracing

In at least 90 percent of cases, DOC, in conjunction with the District of Columbia Department of Health, will conduct contact tracing of any COVID-19 positive residents and staff, test exposed residents, and ensure appropriate quarantining and isolation of residents and ensure that DOC staff follow the quarantining and isolation polices applicable to DOC staff.

3.  Masking

DOC will require staff to wear masks covering their noses and mouths.

4.  Social Distancing

DOC will post signage reminding residents and staff to engage in social distancing and will avoid unnecessarily crowding residents.

5.  Sanitation and hygiene

DOC will maintain substantial compliance with its shower policy and will provide residents with access to soap, cleaning supplies, and instructions for the use of those supplies. DOC will sanitize a cell between occupancies by different residents and keep common areas clean.

6.  Recreation

DOC will make all reasonable efforts to provide residents in general housing units with four hours of out-of-cell time each day and four hours of outdoor time each week, but does not guarantee that residents will receive four hours of out-of-cell time each day or four hours of outdoor time each week. DOC will make all reasonable efforts to ensure that residents on quarantine and isolation units are permitted to leave their cells every day for showers, but does not guarantee that residents in quarantine or isolation will be able to leave their cells on any given day.

7.  Non-Punitive Quarantine and Isolation

DOC will provide medical staff visits to residents on quarantine and isolation units at least once per day, and will provide residents on quarantine and isolation units with access to soap and cleaning supplies, access to a shower at least once every 48 hours, and the opportunity to initiate a confidential legal call with their attorney. DOC will permit residents in quarantine units to be outside of their cell at least once per day. DOC will facilitate scheduled court appearances by telephone for residents housed in a quarantine or isolation unit. DOC does not guarantee that

residents in quarantine or isolation will be able to appear for court proceedings in-person or by video.

**IV.**   **Inspections**

All Inspections required under this Agreement shall be conducted by the Inspector, whom the Parties have designated as Dr. Carlos Franco-Paredes. Should Dr. Carlos Franco-Paredes be unable to perform his duties as Inspector, this Agreement shall be stayed while the parties jointly agree on a replacement Inspector. If the parties cannot agree on a new inspector within 21 days, they shall attempt to reach agreement with the assistance of the Mediators. The six-month duration of the Agreement shall resume upon the appointment of a mutually agreed-upon Inspector.

The Inspector will conduct unannounced inspections of CDF and CTF and will provide DOC's General Counsel, Plaintiffs' counsel, and Defendants' counsel with no less than 48 hours' advance notice of each inspection. DOC's General Counsel may provide advance notice of the inspection to Gloria J. Robertson, Compliance and Review Officer for DOC, or to one person on DOC staff designated in her stead, for the purpose of ensuring that the Inspector has an escort while on site. Anyone with prior knowledge of the inspection shall hold that information in strict confidence. No one other than Plaintiffs' counsel, Defendants' counsel, DOC's General Counsel, and the single person on DOC staff notified by the General Counsel, shall be given any notice of an inspection prior to its occurrence.

The Inspector will conduct up to five inspections over six months to assess compliance with the provisions identified in Section III above. As soon after each inspection as is reasonably practicable, the Inspector will provide the Parties with a report stating whether DOC was found to be in compliance with the standards identified in Section III above. The Inspector will conduct the first inspection no later than 21 calendar days after the Effective Date of this Agreement. The

Inspector will conduct any subsequent inspections no fewer than 10 days after issuing his most recent report. The Inspector will conduct the final inspection no later than six months after the Effective Date of this Agreement. If the Inspector determines on two consecutive occasions that DOC has passed inspection on any provision identified in Section III above, that provision will not be subject to further inspection.

**V.    Fact-finding by In-person Inspections**

1. Medical access

The Inspector will determine, through random sampling of medical records to take place only on site at a DOC facility, whether 90 percent of residents who request care related to COVID-19 symptoms are seen within 24 hours and whether 100 percent of those residents are seen within 48 hours. The Inspector will coordinate directly with Unity Medical and DOC Medical Staff in performing this review and determination. The Inspector will determine, through interviews with a sample of residents chosen at random by the Inspector and by verification of appropriate medical records, whether 90 percent of residents report no complaints with delays in receiving medical care related to COVID-19.

2. Contact tracing

The Inspector will determine, through random sampling of contact tracing records to take place only on site at a DOC facility, whether 90 percent of positive COVID-19 tests among DOC staff and residents resulted in executed and documented contact tracing, testing of exposed residents, with timely notice to exposed staff, and appropriate quarantining and isolation of residents.

3. Masking

The Inspector will determine through visual observation whether DOC is in substantial compliance with its masking policies, including that residents and staff have consistent access to masks and that, in general, staff are wearing masks that cover their noses and mouths when required by DOC's masking policies.

4. Social distancing

The Inspector will determine through visual observation whether accurate signs reminding staff and residents to engage in social distancing are posted throughout both CDF and CTF, and that the actions of DOC staff are not unnecessarily forcing residents into crowding.

5. Sanitation and hygiene

The Inspector will determine whether DOC is in substantial compliance with its shower policy, including that residents have access to soap. The Inspector will determine whether residents have access to cleaning supplies and instructions for the use of those supplies, and that when any resident is placed in a new cell, the cell is first sanitized. The Inspector will determine whether, in his estimation, the common areas in DOC facilities appear to be clean.

6. Recreation

The Inspector will determine whether DOC has made all reasonable efforts to ensure that residents in general housing units have four hours of out-of-cell time each day and four hours of outdoor time each week. The Inspector is advised that DOC does not guarantee that residents will receive four hours of out-of-cell time each day or four hours of outdoor time each week. The Inspector will determine whether DOC has made all reasonable efforts to ensure that residents on COVID-19 quarantine and isolation units are permitted to leave their cells every day for showers.

The Inspector is advised that DOC does not guarantee that residents in quarantine or isolation will be able to leave their cells on any given day.

    7.   Non-Punitive Quarantine and Isolation

The Inspector will determine whether residents placed in quarantine and isolation are visited by medical staff at least once per day, whether they have access to soap and cleaning supplies, whether they are permitted to shower at least once every 48 hours, whether they can initiate a confidential legal call with their attorney, and whether residents in quarantine units are allowed outside of their cell at least once per day. The Inspector will determine whether, subject to any requirements set forth by court order, DOC is facilitating scheduled court appearances by telephone for any resident housed in a quarantine or isolation unit. The Inspector is advised that DOC does not guarantee that residents in quarantine or isolation will be able to appear for court proceedings in-person or by video.

## VI.   **Duration of Agreement**

This Agreement will remain in effect for six months after the Effective Date, unless terminated prior to that date by mutual agreement of the Parties. During the effective term of the Agreement, the Court retains jurisdiction over this matter for purposes of enforcing this Agreement. The inspections provided for in Section IV and V may begin at any time after the Effective Date, subject to the requirements of Section IV above.

## VII.   **Enforcement**

This Settlement Agreement is not, and may not be construed as, a consent decree. To the contrary, this is a settlement agreement which the Parties agree is a fair, reasonable and adequate resolution of this case. Prior to taking any action to enforce the terms of this agreement, counsel for Plaintiffs shall notify counsel for DOC and the mediators of the alleged non-compliance in

writing and give DOC eight (8) days to investigate and cure the alleged breach. No Party shall seek any relief from the Court before all Parties have met and conferred with the Mediators and determined that the matter at issue cannot be resolved through mediation.

## VIII.  **Preliminary and Final Approval of Settlement**

Within 14 days of the Effective Date of this Agreement, the Parties shall jointly submit to the Court this Settlement Agreement along with a joint motion for preliminary approval; a proposed notice to class members, an objection period, and a request for a fairness hearing; and a proposed notice of the final remedy for posting in the D.C. Jail upon Final Approval under Rule 23(e) of the Federal Rules of Civil Procedure. Pending approval of this Agreement, the Parties shall comply with its terms once all Parties have executed the final Agreement.

## IX.  **General Provisions**

1.     General Release: Effective as of the dismissal of this Lawsuit as provided for in paragraph 3 of Section X, Plaintiffs hereby fully release, forgive, and discharge the Defendants and the District of Columbia, its current, former, and future officers, agents, attorneys, officials, servants and employees for all claims that were or could have been asserted by Plaintiffs and/or Settlement Class members in any forum based on the facts as alleged in the Complaint under any theory of liability (including any request for attorney's fees and costs in prosecuting this case). In entering into this Agreement, there is no admission of liability by Defendants or admission of any factual contentions that have been asserted by Plaintiffs in this litigation. The Plaintiffs do not suggest or concede a lack of merit to their claims. The Defendants do not accept or concede any factual contention that has been asserted by the Plaintiffs in this litigation.

2.     No Third-Party Beneficiary Right: This Agreement does not and is not intended to create any rights that can be relied upon or enforced by individuals who are not Parties to this

Lawsuit. The Parties stipulate, agree, and acknowledge that this Agreement is not intended to create any third-party beneficiaries.

3.      Failure to Enforce: Failure by either party to enforce this Agreement or any provision or deadline thereof, shall not be construed as a waiver of its right to enforce that or any other provisions or deadlines of the Agreement.

4.      Binding Effect: This Agreement shall be applicable to, and binding upon, all settling parties and their respective officers, agents, employees, contractors, assigns, and successors in office.

5.      Non-Severability: The Parties do not intend any part of this Agreement to be severable absent express written agreement by the Parties.

6.      Duty to Defend the Settlement Agreement: The Parties and their counsel agree to defend this Agreement. Counsel for all Parties shall take no position contrary to or inconsistent with the terms of the Agreement.

7.      Entire Agreement: This Agreement represents the entire agreement and understanding between and among the Parties concerning the matters set forth herein. This Agreement supersedes all prior discussions, negotiations, understandings, and agreements between the Parties relating to the subject matter of this Agreement whether oral or written, all of which are merged herein. This Agreement may not be changed orally and may be amended only by a writing signed by all Parties or by their respective duly authorized representatives and only if such amendment is agreed to prior to final approval by the Court. This Agreement creates no obligations or duties on the part of the Parties other than as specifically stated in this Settlement Agreement.

8.      The Parties agree that all objections and requests to be heard will be submitted to the Court and counsel for the Parties in writing at least fourteen (14) days before the scheduled fairness hearing.

9.      This Settlement Agreement is subject to and conditioned on a fairness hearing conducted by the Court and the final approval of this Settlement Agreement.

10.      The undersigned representatives of the Parties certify that they are fully authorized to enter into and to execute the terms and conditions of this Settlement Agreement and to make such Settlement Agreement fully and legally binding upon and enforceable against every party on whose behalf they have executed this Agreement.

11.      Provided that all Parties execute a copy of this Agreement, the Settlement Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Executed copies of this Agreement may be delivered amongst the Parties by email or other comparable means. This Settlement Agreement shall be deemed fully executed and entered into on the date of execution by the last signatory.

12.      The Court shall retain jurisdiction over this action for purposes of enforcing this Agreement. The Parties stipulate that this Agreement satisfies 18 U.S.C. § 3626(a)(1)(A).

## X.      **Preliminary Approval, Fairness Hearing, And Final Order of Approval**

1.      Before this Agreement becomes final and binding on the Parties, the Court shall hold a fairness hearing to determine whether to enter a Final Order of Approval. A proposed Final Order of Approval shall be submitted to the Court. In the event that a Final Order of Approval consistent with the terms set forth in the Agreement is not entered, either party has the right to withdraw from the settlement.

2.     Fees and Costs: Each party shall bear its own fees, costs, and expenses. Subject to the Court's Orders of Preliminary and Final Approval, the District of Columbia shall be solely responsible for compensating the Inspector.

3.     Dismissal With Prejudice: Plaintiffs shall file a Stipulation of Dismissal of this Lawsuit with prejudice within 15 days of the final expiration of this Agreement.

Dated:  February 14, 2022

KARL A. RACINE
Attorney General for the District of Columbia

*Chad Copeland / FA*

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General

ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
MICAH BLUMING [1618961]
PAMELA DISNEY [1601225]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-6643
(202) 730-1470 (fax)
andy.saindon@dc.gov
micah.bluming@dc.gov
pamela.disney@dc.gov

*Counsel for Defendants*

/s/ Zoé Friedland
Zoé E. Friedland (Bar ID D00516)
Jonathan W. Anderson (D.C. Bar # 475306)
Jenna Cobb (D.C. Bar # 979506)
Hanna Perry*
Public Defender Service for the District of Columbia
633 Indiana Avenue N.W.
Washington, D.C. 20004
Tel. 202-824-2524
Fax 202-824-2525
zfriedland@pdsdc.org
*Member NY Bar; Practicing in DC under DC App. R. 49(c)(9)(B)

/s/ Scott Michelman
Scott Michelman (D.C. Bar # 1006945)
Arthur B. Spitzer (D.C. Bar # 235960)
Michael Perloff (D.C. Bar # 1601047)
American Civil Liberties Union Foundation
        of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
Tel. 202-457-0800
smichelman@acludc.org

/s/ Jacob S. Kreilkamp
Jacob S. Kreilkamp
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071-3426
Tel.: 213-683-9260

Fax: 213-593-2960
jacob.kreilkamp@mto.com

*/s/ Rachel G. Miller-Ziegler*
Rachel G. Miller-Ziegler (D.C. Bar # 229956)
Brendan B. Gants (D.C. Bar # 1031419)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW, Suite 500
Washington DC, 20014
(202) 220-1100
rachel.miller-ziegler@mto.com

*Counsel for Plaintiffs*